IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHEILA MEUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 2:15-cv-847-MHT-TFM |
| | ) |
| ROBERT A. MCDONALD, | ) |
| Secretary of Veterans Affairs, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.     INTRODUCTION**

Plaintiff, Sheila Meuse, a former employee of the Department of Veterans Affairs filed her Complaint in this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") and 42 U.S.C. § 1981.  *See* Amended Complaint, Doc. 19.  This court has jurisdiction of Meuse's discrimination claims pursuant to the jurisdictional grant in 42 U.S.C. § 2000e-5.  Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law.  (Doc. 2).

By prior Recommendation, the undersigned recommended the Motion to Dismiss the original complaint be granted in full and this case be dismissed with prejudice.  (Doc. 17).  Without discussion as to the rationale of the Recommendation, the District Court

1

issued an Opinion and Order adopting the Recommendation with the following exception "Plaintiff's claims are dismissed without prejudice and with leave to file an amended complaint". (Doc. 18 at p. 3). Thereafter, Plaintiff filed an Amended Complaint (Doc. 19), to which Defendant has filed a Partial Motion to Dismiss (Doc. 23 and EEOC decision attached as Exh. A.) In her Amended Complaint, Plaintiff brings claims pursuant to 42 U.S.C. § 2000e-2 for Race, Sex and Color Discrimination Count - I, Harassment/Hostile Work Environment - Count II, Retaliation - Count III and Constructive Discharge - Count IV.

Now pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 23 and 23-1) and Plaintiff's Response thereto (Doc. 26 and attached "Position Description" Doc. 26-1). Specifically, Defendant seeks to dismiss Plaintiff's First Amended Complaint as to Count I, in part, and Counts II-IV, in full, on the basis of the Federal Rules of Civil Procedure, Rule 12(b)(6) for failure to state a claim and for failure to exhaust administrative remedies. The Court has carefully reviewed the motion to dismiss and briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials. For good cause, it is the RECOMMENDATION of the Magistrate Judge that Defendant's Motion to Dismiss (Doc. 23) be granted in part and denied in part as set out herein.

## II. STANDARD ON MOTION TO DISMISS

In considering a Rule 12 (b)(6) motion, the Court accepts the plaintiff's allegations as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). Further, the Court construes

the complaint in favor of the plaintiff. *Duke v. Cleland,* 5 F. 3d 1399, 1402 (11th Cir. 1993). The standard for a motion to dismiss under Rule 12(b)(6) was explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and refined in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.

*Iqbal,* 129 S.Ct. at 1949-50 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.,* at 195; *Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011)("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the Court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs,* 486 Fed. App'x 3, 6 (11th Cir. 2012). (Citation omitted.) "To survive a motion to dismiss, a complaint need not contain 'detailed factual

3

allegations' but instead the complaint must contain 'only enough facts to state a claim to relief that is plausible on its face.'" *Maddox v. Auburn Univ. Fed. Credit Union,* 441 B.R. 149, 151 (M.D. Ala. 2010). (Citation omitted).

Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,,* 654 F.3d at 1156 ("The possibility that - *if* even a possibility has been alleged effectively - these defendants acted unlawfully is not enough for a plausible claim."). (Emphasis in original.) Plaintiff is required to "allege more by way of factual content to nudge [her] claim . . . across the line from conceivable to plausible." *Iqbal,* 129 S. Ct. at 1952 (internal editing and citation omitted.) However, the law requires the court to "liberally construe[]" the pleadings of *pro se* litigants. *Tannenbaum v. United States,* 148 F. 3d 1262, 1263 (11th Cir. 1998). Even so, *pro se* pleadings are still required to comply with the rules of procedure. *McNeil v. United States,* 508 U.S. 106, 113 (1993).

### III.     FACTUAL AND PROCEDURAL HISTORY

In Plaintiff's First Amended Complaint, she alleges she is a white female who was employed by the Department of Veterans Affairs for a majority of the time between 1984 and 2015. (Doc. 19 pp.1-3). From December 28, 2013 until March 31, 2015, Plaintiff was employed as the Assistant Director of the Central Alabama Veterans Health Care System (CAVHCS). (Doc. 19 pp. 2-3). In this position, she reported directly to James Talton, a black male who served as Director CAVHCS, and indirectly to Charles Sepich, a white male who served as Director Veterans Affairs Southeast Network/Veterans Integrated

Service Network. (Doc. 19 p. 3-4). The Position Description for Assistant Director[1], defines the position's Level of Responsibility as follows:

> The incumbent is a full member of the key Executive leadership team of the Health Care System and as such, works on a day-to-day basis in partnership with the Director, Associate Director, Chief of Staff, and Associate Director for Patient Care Services. In this capacity, the incumbent participates fully in policymaking and management decisions affecting the organization.

(Doc. 19 ¶ 22; Doc. 26-1 p.5). Plaintiff's duty station was in Montgomery, Alabama. (Doc. 19 ¶ 22).

Plaintiff alleges that she "executed her job responsibilities according to the position description, which necessitated travel between CAVHCS sites; this included days or parts of days spent in Montgomery, Tuskegee, Monroeville, Dothan/Ft. Rucker, and Columbus (GA)." (Doc. 19 ¶ 28). She alleges that on June 23, 2014, Talton "changed the conditions and specified her work location requirements." *Id.* She further alleges that Sepich "detailed [her] to a position as Acting Associate Director in Charleston, South Carolina effective July 15, 2014 through October 2014, with no additional pay or benefits." (Doc. 19 ¶ 29).

In August 2014, Talton was placed on administrative leave and Sepich appointed Robin Jackson as Acting Director. Upon her return from Charleston, Jackson became

---

[1] Plaintiff recites language from the Position Description in her Amended Complaint (Doc. 19 ¶ 23) and attaches a full copy of the Position Description to her Response to Defendant's Motion to Dismiss (Doc. 26-1). On a 12(b)(6) motion, a Court must limit its consideration to the complaint, the written instruments attached as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Hodge v. Orlando Utilities Commission,* 2009 WL 5067758*3 (M.D. Fla.) citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 323 (2007). Accordingly, in analyzing Defendant's Motion to Dismiss, the Court considers Plaintiff's Position Description.

Plaintiff's direct supervisor. (Doc. 19 p. 9). Plaintiff alleges that on March 27, 2015, just prior to Plaintiff's last day of employment with CAVHCS, Jackson rated her performance "excellent". (Doc. 19 ¶ 34).

During Plaintiff's employment, CAVHCS was experiencing a "patient care crisis" which resulted in extreme delays in patients receiving care. (Doc. 19 p. 11). Plaintiff conducted fact-finding and made recommendations to Talton and others about how to remedy the patient care problems. (Doc. 19 pp. 11-13). Plaintiff alleges that in spite of poor performance issues, Talton "defended and provided favorable treatment" to Janice Hardy, a black female who served as Human Resources Officer, (Doc. 19 ¶¶ 52, 53) and to Carolyn Caver Gordon, a black female who served as Associate Nurse Executive for Mental Health. (Doc. 19 ¶ 54). Further, Plaintiff alleges that in spite of concerns about performance issues Talton named Cliff Robinson, a black male, as Acting Director. (Doc. 19 ¶¶ 31, 44).

In July 2014, Plaintiff filed an EEO Complaint alleging a hostile work environment based on race (Caucasian), color (White), and gender (Female) discrimination and identifying seven events that occurred at CAVHCS which she claims were discriminatory. These events are as follows:

1) On June 6, 2014, former (fired) Medical Center Director James Talton sent an email to several recipients criticizing Plaintiff's input.
2) On June 11, 2014, former (fired) Medical Center Director James Talton made the following statement to Plaintiff, "You are part of the problem" using an aggressive tone in the presence of the Associate Director, Richard Tremaine.
3) One June 16, 2014, former (fired) medical Center Director James Talton sent an email message to Plaintiff asking why Plaintiff was not at an 11:00 a.m.

      meeting on bulletin boards; however, when Plaintiff arrived at the meeting at 11:01, Plaintiff was told the meeting had been cancelled.

4) One [sic] June 16, 2014, former (fired) Medical Center Director James Talton questioned why Richard Tremaine (Associate Director) added Plaintiff to an email.

5) On June 17, 2014, former (fired) Medical Center Director James Talton sent a message misrepresenting Plaintiff's behavior, and giving Plaintiff conflicting guidance.

6) On June 23, 2014, former (fired) Medical Center Director James Talton messages Plaintiff specifying Plaintiff's work schedule as "East Campus [Tuskegee] three days weekly, and on West Campus [Montgomery] the other days of the week" and inaccurately referenced a written in-brief and previous direction.

7) On June 26, 2014, former VISN 7 Director Charles Sepich initiated an investigation, which included investigating Plaintiff, regarding allegations that Plaintiff had told groups of employees that former (fired) Medical Center Director James Talton lied to a Congresswoman.

(Doc. 19 at ¶ 12 and pp. 17-27; Doc 8-1 p. 3). On August 6, 2015, the Administrative Judge rendered a Decision denying all of Plaintiff's claims, which the VA's Office of Employment Discrimination Complaint Adjudication adopted. (Doc. 8-1).

     Plaintiff later filed a second EEO Complaint on December 20, 2014, alleging a hostile work environment based on race (Caucasian, color (White), gender (Female) and reprisal and identifying three events to support her claim. These events are as follows:

1. On August 4, 2014, Complainant was issued a Memorandum of Expectation because of fact-finding investigation. (Written Counseling)
2. On October 28, 2014, when Complainant was called to give her account of events to an Administrative Investigative Board that was initiated on October 12, 2014, she became aware that she was the subject of the investigation.
3. On October 29, 2014, Complainant became aware of management's plans to restructure the organization and create another leadership position, which would dilute her responsibilities and negatively affect her potential to serve in leadership positions. (Investigative File (IF pp. 30-31).

(Doc. 19 at ¶ 12 and pp. 27-29; Doc. 23-1 at 2). Plaintiff filed her Complaint with this Court on November 12, 2015. (Doc. 1). Pursuant to this Court's Order allowing Plaintiff to amend her Complaint (Doc. 18), Plaintiff filed an Amended Complaint. (Doc. 19). In response to Plaintiff's First Amended Complaint, Defendant filed a Motion to Dismiss for Failure to State a Claim (Doc. 23 and 23-1) to which Plaintiff has responded. (Doc. 26 and attached "Position Description" Doc. 26-1). Specifically, Defendant seeks to dismiss Plaintiff's First Amended Complaint as to Count I, in part, and Counts II-IV, in full, on the basis of the Federal Rules of Civil Procedure, Rule 12(b)(6) for failure to state a claim and for failure to exhaust administrative remedies.

## IV. DISCUSSION

### A. Plaintiff's Claim for Race, Color[2], and Gender Discrimination (Count I)

Defendant concedes that Plaintiff's Amended Complaint states a cause of action for race and gender discrimination with respect to the three events occurring in August and October 2014. (Doc. 23 at p. 10). However, Defendant argues that Plaintiff's Amended Complaint should be dismissed as to the seven acts occurring in June 2014. (Doc. 23 at pp. 10-11). The Court sees no logical reason to limit Plaintiff's race and gender discrimination claim to certain factual allegations in the Amended Complaint. Rather,

---

[2] The Court recognizes that "color discrimination is distinct from race discrimination in that the former 'arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as the case where a dark colored African-American individual is discriminated against in favor of a light-colored African-American individual.'" *Gill v. Bank of Am. Corp.,* 2015 WL 4349935, * 4 (M.D. Fla. July 14, 2015) (citations omitted). However, Plaintiff nowhere in her complaint, as amended, or her responsive briefs alleges discrimination based on the hue of her skin. Thus, the Court concludes that this claim is due to be dismissed.

8

since the Court concludes, and Defendant concedes, that Plaintiff's Amended Complaint states a claim as to race and gender discrimination, the Court will allow Plaintiff's claim to stand on the basis of all factual allegations included in the Amended Complaint.

To assert a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e ("Title VII"), Plaintiff may create an inference of discrimination[3] by showing she: 1) was a member of a protected class, 2) was qualified for the job, 3) suffered an adverse employment action, and 4) her employer treated similarly situated employees outside the protected class more favorably.  *Hopkins v. St. Lucie Cnty. Sch. Bd.,* 399 F. App'x 563, 565 (11th Cir. 2010) (affirming grant of motion to dismiss on Title VII claim) citing *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir.2008)); *see also Chapman v. U.S. Postal Serv.,* 442 F. App'x 480, 484 (11th Cir. 2011) (affirming grant of motion to dismiss on *pro se* Title VII claim concluding Plaintiff failed to "sufficiently allege an adverse employment action for discrimination . . . . purposes").

Construing the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff's Amended Complaint states a claim for gender and race discrimination. Indeed, Plaintiff alleges that she was qualified for the job. (Doc. 19 at ¶¶ 28 and 34).  She also alleges that she suffered an adverse employment action when she was "detailed . . .  to a position as Acting Associate Director in Charleston, South Carolina

---

[3]  "Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, *Swierkiewicz v. Sorema N.A.,* 534 U.S.  506, 511, 122 S. Ct. 992, 997, 152 L.Ed.2d 1 (2002), it must provide 'enough factual matter (taken as true) to suggest' intentional race discrimination.  See *Twombly,* 127 S.Ct. at 1965." *Davis v. Coca-Cola Bottling Co., Consol.,* 516 F. 3d 955, 974 (11th Cir. 2008).

effective July 15, 2014 through October 2014, with no additional pay or benefits." (Doc. 19 ¶ 29). Finally, Plaintiff alleges that her employer treated similarly situated employees outside the protected class more favorably. Indeed, Plaintiff alleges that in spite of poor performance issues, Talton "defended and provided favorable treatment" to Janice Hardy, a black female who served as Human Resources Officer, (Doc. 19 ¶¶ 52, 53) and to Carolyn Caver Gordon, a black female who served as Associate Nurse Executive for Mental Health. (Doc. 19 ¶ 54). Further, Plaintiff alleges that in spite of concerns about performance issues Talton named Cliff Robinson, a black male, as Acting Director. (Doc. 19 ¶¶ 31, 44). *Hopkins,* 399 F. App'x at 565. Accordingly, the Court concludes that Defendant's Motion to Dismiss is due to be denied as to Plaintiff's race and gender discrimination claims.

### B. Plaintiff's Claim for Hostile Work Environment (Count II)

To sufficiently plead a hostile work environment claim under Title VII, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S. Ct. at 1974) which demonstrates that she (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability. *See Edwards v. Prime Inc.,* 602 F. 3d 1276, 1300 (11th Cir.2010) (dismissing hostile work environment claim for failure to satisfy pleading standard under

10

Fed. R. Civ. Pro. 8(a)) (citations omitted). Now the Court must consider whether Plaintiff's allegations in her complaint are sufficient under the pleading standards of 12(b)(6) to state a claim for hostile work environment under Title VII.

Plaintiff has alleged that she was the only white female holding an executive leadership team position with the VA (Doc. 19 at ¶¶ 22 and 56) and that during her employment with the VA she was discriminated against and harassed based on her race and gender. (Doc. 19 ¶¶ 85-93). *See Edwards, id.* The Eleventh Circuit has stated that whether harassment is severe or pervasive enough to alter an employee's terms or conditions of employment depends upon "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.,* 195 F. 3d 1238, 1246, (11th Cir. 1999) (en banc) (citations omitted). "[T]easing, offhand comments and isolated incidents do not constitute discriminatory changes in the terms and conditions of employment." *Satchel v. Sch. Bd. of Hillsborough Cnty.,* 251 F. App'x. 626, 630 (11th Cir. 2007).

In her Amended Complaint, Plaintiff alleges as follows:

> Defendant's discrimination, harassment and hostile environment was made manifest through pervasive disparate treatment including but not limited to verbal and psychological abuse, selectively applying meeting timeliness and attendance standards to her, selectively scrutinizing her schedule, selectively scrutinizing her word choice, impeding her ability to perform her required tasks through exclusion and isolation from necessary information and communication with colleagues, exclusion from meetings and activities, and interfering with her professional standing and credibility by making unfounded accusations, treating her in a demeaning manner, and visibly excluding her from the Pentad leadership participation.

(Doc. 19 at ¶ 91). Further, Plaintiff alleges at one meeting Talton's "loud, angry, intimidating and accusatory" conduct and language caused her to become "fearful". (Doc. 19 ¶ 67). Additionally, Plaintiff alleges Talton sent several "intimidating" and "accusatory" emails to and about Plaintiff. (Doc. 19 ¶¶ 73, 76). Further, Plaintiff alleges Talton changed Plaintiff's workstation assignment "effectively tying Plaintiff's hands to make it difficult if not impossible to execute her job responsibilities." (Doc. 19 ¶ 80). Thus, the Court concludes that Plaintiff's Complaint, as amended, alleges that the Defendant's conduct was sufficiently frequent, severe and threatening to state a claim for hostile work environment and that this conduct interfered with her performance. *See Mendoza,* 195 F. 3d at 1246. Accordingly, the Court concludes Defendant's Motion to Dismiss on the Plaintiff's hostile environment claim is due to be denied.

### C. Plaintiff's Claim for Retaliation (Count III)

To establish a prima facie case of retaliation, Plaintiff must demonstrate that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1454 (11th Cir. 1998). (Citation omitted). In her Amended Complaint, Plaintiff attempts to bring a retaliation claim alleging "[p]laintiff had provided notice to Defendant of . . . harassment and discrimination based on race, sex, and color and Defendant was aware of Plaintiff's prior protected activities." (Doc. 19 ¶ 96). (Emphasis omitted). Plaintiff filed a complaint with the EEOC on July 25, 2014, which Plaintiff admits did not state a claim for retaliation. (Doc. 19 at ¶


12). She filed a second complaint with the EEOC on December 20, 2014 "in an attempt to add continuing events of hostile work environment and **reprisal** to the original complaint." (Doc. 19 at ¶ 12). (Emphasis added.) Specifically, Plaintiff alleges that following her July 25, 2017 EEOC complaint, she received "written counseling" on August 4, 2014; she was called before the Administrative Investigative Board on October 28, 2014; and, on October 29, 2014 she "became aware of management's plans to restructure . . . which would dilute her responsibilities". (Doc. 19 at ¶ 12 and pp. 27-29; Doc. 23-1 at 2). The Court concludes that these allegations are sufficient to state a claim "that is plausible on its face" for retaliation for events taking place following Plaintiff's July 25, 2014 EEOC complaint. *Maddox,* 441 B.R. at 151. Thus, Defendant's Motion to Dismiss Plaintiff's retaliation claim is due be denied as to events following Plaintiff's July 25, 2014 EEOC complaint, but is due to be granted as to any claims based on events preceding July 25, 2014.

### D.  Plaintiff's Claim for Constructive Discharge  (Count IV)

The Eleventh Circuit has held that "[a] constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." *Fitz v. Pugmire Lincoln-Mercury, Inc.,* 348 F. 3d 974, 977 (11th Cir. 2003). In her Amended Complaint, Plaintiff alleges as follows:

> [a]s a direct result of the discriminatory, harassing, and retaliatory actions and events set in motion by Sepich and Talton earlier in 2014, and under the increasingly extreme stress and hostility, in fear of her career and reputation being further damaged, and under the shadow of an OAR investigation that was not "closed" until months later, Dr. Meuse left VA at the end of March 2015.

(Doc. 19 at ¶ 84). She further alleges that

> [t]his persistent pattern of Defendant's misconduct continued and exacerbated and constituted a pervasive disruption to her work duties and overall performance so as to create a constructive discharge under the law.

(Doc. 19 at ¶ 99). Thus, the Court concludes that Plaintiff's Amended Complaint states a claim for constructive discharge. Accordingly, the Court concludes that Defendant's Motion to Dismiss is due to be denied as to Plaintiff's claim for constructive discharge.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Defendants' Motion to Dismiss (Doc. 26) be GRANTED in part and denied in part as follows:

(1) The Motion to Dismiss be granted and Plaintiff's claims for color discrimination be dismissed with prejudice.

(2) The Motion to Dismiss Plaintiff's retaliation claim be denied as to claims arising from events following Plaintiff's July 25, 2014 EEOC complaint, but be granted as to any claims arising from events preceding July 25, 2014.

(3) The Motion to Dismiss be denied as to Plaintiff's claims for race and gender discrimination, hostile work environment and constructive discharge.

It is further

ORDERED that the Parties shall file any objections to this Recommendation on or before **Tuesday, August 1, 2017.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.

Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 18th day of July, 2017.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE